In the Matter of the Estate of FREDRIKA P. LUDLAM, Deceased.

Surrogate's Court, New York County, January 15, 1936.

*Emmett McLoughlin, Jr.,* for Gerald Ludlam Robinson, executor.

*Daniel A. Boyle,* for Francis Blossom and Raymond Smith, substituted trustees, respondents.

*Compton, Dillon & Clark* [*Thomas K. O'Brien* of counsel], for Matilda S. Robinson and individual claim of Gerald L. Robinson.

*Bergen & Prendergast* [*Samuel Matthews* of counsel], claimants for compensation for professional services.

FOLEY, S. The principal question in this contested accounting proceeding arises out of the delivery to Mrs. Matilda S. Robinson of a check for the sum of $7,000 by the decedent. The check was drawn upon the Fifth Avenue Bank in this city. It was signed by the decedent on Saturday, March 17, 1934. At the time she was suffering from pneumonia. It was drawn to the order of Mrs. Robinson. The decedent died less than forty-eight hours later on the morning of March 19, 1934.

Upon the same day and after her death, the check was presented to the bank by Gerald Ludlam Robinson, the husband of Mrs. Robinson, and was certified. The check was deposited in the individual bank account of Mrs. Robinson and collected in the regular course. The claimant's husband was the nephew of the decedent. The Robinsons had resided with her for many years. Mrs. Robinson asserts that the proceeds of the check represented a valid gift made to her based upon love and affection.

Mr. Robinson was appointed sole executor of this estate under the will of his aunt. He qualified and letters testamentary were issued to him. Shortly afterwards a controversy arose as to the validity of the check transaction. His attorney advised him that the gift was ineffective and that the proceeds must be returned to the estate. It further appears that immediately after the deposit of the certified check in his wife's bank account, he obtained the sum of $5,000 out of the proceeds, which he claims to have been a loan from his wife.

In order to dispose amicably of the dispute which had arisen over the check, a conference of the executor, his attorney and several of the beneficiaries under the will was held. As a result of this conference Mrs. Robinson paid back into the estate cash in the sum of $2,000 and Mr. and Mrs. Robinson executed, on May 29, 1934, promissory notes aggregating the balance of $5,000 payable to the estate. He also executed a conditional conveyance of his interest in certain real property which was specifically devised to him by the will of the decedent. The conveyance of the property furnished collateral security for the payment of the notes. Mrs. Robinson contends that her claim for $7,000 is valid. Mr. Robinson asserts that the notes and conveyance were procured by duress and he asks that they be canceled.

The relief sought by both Mr. and Mrs. Robinson must be denied. As to Mrs. Robinson, her claim must fail because the check was a revocable authorization for the payment of money, which made the payee the agent of the drawer, and the death of the drawer before the check was certified or paid by the bank revoked the agency of the payee. In an unbroken line of authorities beginning with *Harris* v. *Clark* (3 N. Y. 93), the courts of our State have followed this rule. The pertinent principles enunciated by these decisions may be summarized as follows:

(1) The check of itself is a mere order for the payment of money. (*Harris* v. *Clark, supra; Glennan* v. *Rochester. Trust & S. D. Co.,* 209 N. Y. 12, 16.)

(2) It does not operate as an assignment, either legal or equitable, of any part of the fund. (*Matter of Smither,* 30 Hun, 632; *Attorney-General* v. *Continental Life Insurance Co.,* 71 N. Y. 325.)

(3) The death of the principal revokes the authority of the agent to collect the check.

(4) Where the check is based upon a valuable consideration and the death of the drawer intervenes before certification or payment, the claim may be enforced as against the estate, but not against the bank upon which the check was drawn.

(5) The bank cannot be held liable to the estate where the check is paid by it without knowledge of the death of the maker. (Neg. Inst. Law, § 325; *Glennan* v. *Rochester Trust & S. D. Co., supra.*)

(6) When consideration for the check is absent, the estate may enforce recovery from the payee for the amount collected, where the check has been certified or paid by the bank after the death of the maker.

(7) The transaction may not be sustained as a valid gift since the giving of the check is executory and the essential element of a completed delivery is absent. (*Harris* v. *Clark, supra; Matter of Stacey,* 89 Misc. 88, FOWLER, S.; *Matter of Mead,* 90 id. 263, KETCHAM, S.; affd., 173 App. Div. 982; affd., 221 N. Y. 645; *Matter of Ehlers,* 132 Misc. 910; *Matter of Gibbons,* 234 App. Div. 153, affg. 139 Misc. 658; *Bainbridge* v. *Hoes,* 163 App. Div. 870, affirming judgment on the opinion of the referee, which was published in 149 N. Y. Supp. 20; *Matter of Heaney,* 136 Misc. 221.) The doctrine of equitable assignment may not be applied to uphold an unexecuted or imperfect gift. (*Matter of Smither,* 30 Hun, 632.)

In view of these rules and the established fact that Mrs. Robinson improperly obtained possession of $7,000 of funds which were actually assets of the estate, her claim must be disallowed. Her repayment to the estate of $2,000 of this sum, I hold was voluntarily made by her. She is likewise liable upon the two notes aggregating $5,000 which constitute the balance of the fund. If restitution in part by cash and in part by these promissory notes had not been made by an amicable arrangement, it would have been enforced against her in a discovery proceeding in this court or by an action in some other appropriate forum.

The demand of Gerald L. Robinson for the cancellation of the notes and conveyance given by him to secure repayment of the moneys is likewise denied. He is the executor of the estate. He participated in the improper diversion and retention of the estate funds. He drew the body of the check before the decedent signed it. He presented it for certification to the Fifth Avenue Bank after her death. The sum of $5,000, which he claimed he borrowed from his wife out of the proceeds, was received by him with full and complete knowledge of its source. The only acts of duress charged are (1) that his own attorney demanded that the moneys be restored, and (2) that the beneficiaries threatened to apply for the removal of the executor if he did not make restitution of the moneys received by him and his wife, or furnish security for their repayment. In the face of the facts, these charges are frivolous. The attorney denied that he employed any coercion upon his client. He informed him of the law and his liability under the law. This advice was

given out of a sense of conscientious duty not only for the protection of his own client, the executor, but for the general advantage of all the beneficiaries of the estate. The attorney sought to correct a breach of trust and to urge the executor to perform an act required by standards of common honesty. Nor did the statement of the other beneficiaries that a revocation proceeding would be brought against the executor constitute duress. As stated by Surrogate DELEHANTY in *Matter of Gude* (150 Misc. 56, at p. 60): " The assertion of an intention to pursue a legal remedy * * * is not duress." Under the terms of the settlement, the executor and his wife did less than the law would have compelled them to do. After partial payment of cash was made they were able to obtain deferment as to immediate payment of the balance by the making of the promissory notes. The evidence shows that the total sum of $7,000 was obtained and withheld as a result of the joint participation of the executor and his wife. If he had not made the settlement, he would have been summarily removed in a proper revocation proceeding and directed to account. A surcharge for the entire sum and a direction for immediate payment would have been decreed against him. (*Matter of Mead*, 90 Misc. 263; affd., 173 App. Div. 982; affd., 221 N. Y. 645.) There is no evidence of duress exercised by any of the parties to the settlement.

I accordingly hold that the promissory notes signed by the executor and his wife and the conveyance executed by him are valid and enforcible.

Certain objections to the account were disposed of upon the prior hearings. A further hearing on the remaining objections will be had on the 29th day of January, 1936, at eleven-thirty A. M.