In the Matter of the Estate of ROGER J. WEBER, Deceased.

Surrogate's Court, New York County, May 13, 1937.

*Coudert Brothers*, for Banca Commerciale Italiana Trust Company, as executor, etc.

*Alfred Norick*, special guardian of infant legatees.

*Henry Escher*, for Honorable Victor Nef, Consul-General of Switzerland in the City of New York and *ex-officio* the representative of various persons interested as legatees or otherwise in the estate of Roger J. Weber, deceased.

*Riegelman, Hess & Hirsch*, for Hirsch, Lilienthal & Company, brokers.

FOLEY, S. In this accounting proceeding a question is presented as to the effect of an order made by the testator to his stockbrokers directing them to transfer an account with them in his individual name to a joint account in the name of Mrs. B. Mösch and himself. The facts are conceded. The testator died in Switzerland on March 11, 1934. Shortly before his death, on March 2, 1934, he addressed a letter to his brokers inclosing a check for $1,000 and directing that it be credited to his account. In the letter he gave the following instructions:

" Please note that all future balances to my credit for dividends or sale of above pub. must be immediately paid to the Chase Natl of Nassau & Pine to the credit of my a/c with them.

" I would also like this a/c of mine with you to be considered a joint account with Mrs. B. Mösch, 24 Schonbergweg, Berne, Switzerland, and please let me know if there are papers to be filled in this connection."

The letter was received by the brokers subsequent to the testator's death. On March 15, 1934, without knowledge of his death, they changed his original account standing in his individual name, to read as follows: " Mrs. B. Mösch & Mr. R. J. Weber JTc/o," and credited the proceeds of the check to the account as changed. Mrs. Mösch now claims ownership of the account apparently on the theory that it vested in her as survivor upon the testator's death. The claim is disallowed.

The letter of instructions to the brokers did not operate to transfer the individual account of the testator to the joint account of the testator and the claimant. The relationship between the testator and his brokers was that of principal and agents. The testator, by his letter, directed them, as his agents, to make the change in the form of his account. His death, however, operated as an immediate revocation of such authority. It is a well-established principle of law that the authority of an agent is terminated by the death of

his principal unless it is coupled with an interest in the subject-matter of the agency. (*Farmers' Loan & Trust Co.* v. *Winthrop*, 238 N. Y. 477; *Farmers' Loan & Trust Co.* v. *Wilson*, 139 id. 284; *Weber* v. *Bridgman*, 113 id. 600; *Matter of Grapel* v. *Hodges*, 112 id. 419; *Oatman* v. *Watrous*, 120 App. Div. 66; *Hoffman* v. *Union Dime Savings Institution*, 109 id. 24; *Stevens* v. *Sessa*, 50 id. 547.) The power of the brokers here was coupled with no interest, and their agency, therefore, ended when the testator died. The actual change made by the brokers in the form of the account after the death of the testator was, therefore, of no effect whatsoever.

Nor did the letter of the testator to his brokers operate as a gift of the account or any part thereof to the claimant. None of the requisite elements of a gift is present. (*Vincent* v. *Rix*, 248 N. Y. 76; *Matter of Van Alstyne*, 207 id. 298.) As stated in *Vincent* v. *Rix* (*supra*): " Delivery is essential to constitute a valid gift. The delivery must be such as to vest the donee with the control and dominion over the property and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee."

The testator never parted with control and dominion over the account. On the contrary, there is indication here that he intended to preserve control in himself, for, in his letter, he directed that " all future balances to my credit for dividends or sale " be immediately paid to the Chase National Bank to the credit of his individual account in that bank. The transaction was inchoate and incomplete. There was no present and absolute transfer. (*Farmers' Loan & Trust Co.* v. *Winthrop, supra; Matter of Ludlam*, 158 Misc. 283.) The gift was executory and prospective, as is evidenced by his letter to the brokers in which he stated that he " would also like this account of mine with you to be considered a joint account with Mrs. B. Mösch * * * and please let me know if there are papers to be filled in this connection." The situation here is similar to that in *Farmers' Loan & Trust Co* v. *Winthrop* (*supra*), where Judge CARDOZO, in referring to a letter from the testatrix to her attorney in fact, said: " Words of present transfer are conspicuously absent. What we have instead is a request or at best a mandate, incompetent without more to divest title or transfer it, serving no other purpose than a memorandum of instructions from principal to agent as a guide to future action." Nor has there been shown any consideration for the transfer, which would operate to vest the account in the claimant under the doctrine of equitable assignment. (*Matter of Smither*, 30 Hun, 632; *Matter of Ludlam, supra.*)

In the absence of any evidence of a gift, the presumption arises that the testator intended to change the form of the account for the purpose of convenience only. (*Matter of Bolin*, 136 N. Y. 177; *Matter of Fenelon*, 237 App. Div. 285; *Matter of Fonda*, 206 id. 61; *Hayes* v. *Claessens*, 189 id. 449; *Oatman* v. *Watrous*, 120 id. 66; *McDonald* v. *Sargent*, 121 Misc. 437.) Title to the account with the brokers, therefore, remained in the testator at the time of his death and did not pass to the claimant.

Submit decree on notice dismissing the claim and settling the account accordingly.