Joseph A. Cox, S.
The executors of this decedent’s estate have instituted a discovery proceeding for the purpose of recovering two items of jewelry of substantial value. The respondents named in the discovery proceeding are the decedent’s sister Florence Palmataire, her sole surviving blood relative, and one Count Angelo M. Albani. Count Albani in his answer admitted possession of the jewelry but asked that the court determine whether the jewelry is the property of the decedent’s estate or the property of Florence Palmataire who claims that a valid gift causa mortis was made to her on or about September 26, 1958. Pursuant to a stipulation entered into between the parties the jewelry has been sold and the proceeds are being held in an escrow account pending the outcome of this proceeding.
*840 The decedent’s will was executed on February 11, 1958 and by its terms the residuary estate is bequeathed in trust with the income thereof payable to the decedent’s sister during her lifetime. Upon the death of the sister the trust remainder will be distributable to six charitable organizations.
The testimony adduced at the hearing in support of the respondent’s claim of gift is summarized in the following narrative statements. On January 7,1958 the decedent turned over to Count Albani the two items of jewelry in question for the purpose of sale and he gave her an informal receipt noted on the back of one of his business cards. Count Albani was an old family friend and also an executive of a leading jewelry firm. In February of 1958 Count Albani communicated with the decedent and advised her that the market was not favorable for a sale at that time and thereupon the decedent authorized the Count to retain possession of the jewelry until a sale would be advisable. In September of 1958 the Count telephoned the decedent and informed her that he believed the time was propitious for the sale of the jewelry and that he would like to discuss the matter with her. The decedent expressed her regrets, advised the Count that she was about to go to Washington, D. C., for two weeks but expected to .return on September 29, 1958 at which time she would be free to discuss the matter with him. The Countess Anne Marguerite Albani, Count Albani’s wife and an intimate friend of the decedent for over 30 years, testified, without objection, that at or about 11:15 p.m. on September 26,1958 she received a phone call from the decedent who said that she was desperately ill, was about to undergo surgery, and wanted the Countess to tell her husband to give the decedent’s jewels to the respondent Florence Palmataire. The Countess went on to testify that she immediately went to her husband’s room, related her conversation with the decedent to him and he said that they would discuss it further in the morning. On the following morning the Countess telephoned the respondent, who lived in Saratoga Springs, New York, and told her of her sister’s illness and of the decedent’s desire that the Count give the jewels to her. In answer the respondent stated that she was ill, having just undergone surgery, was unable to travel to Washington or to New York and requested that the Count hold the jewelry until she was able to see him. This request was communicated to the Count who agreed to hold the jewelry for the respondent. The decedent underwent surgery in the early morning hours of September 27,1958 and died while still a patient at the hospital on October 11, 1958. At the date of decedent’s death the jewelry had not been actually delivered *841 to the respondent and the Count still had possession of it. At the hearing, although no objection was made to the testimony given by the Countess of her conversation with the respondent on the morning of September 27, 1958, objections were made to the admission in evidence of the conversation between the Count and Countess with respect to that conversation.
The record is free of any suggestion of connivance or overreaching and it is the opinion of this court that the testimony adduced at the hearing established that the decedent made a valid inter vivos gift to the respondent. Although the respondent Palmataire pleaded a gift causa mortis, the theory upon which the respondent proceeded was that a gift of the jewelry was made to her. Had the respondent made a motion at the end of the hearing to conform the pleadings to the proof, the court would have granted such motion. (Pattison v. Pattison, 301 N. Y. 65; Matter of Galewitz, N. Y. L. J., May 4, 1955, p. 7, col. 7; Matter of Cahn, 75 N. Y. S. 2d 849.)
In order to establish an inter vivos gift there must be an intent by the donor to make a gift — an intent on the part of the donor to divest herself of all title and right to the property, a delivery of the property to the donee, and an acceptance by the donee (Beaver v. Beaver, 117 N. Y. 421, 428; Matter of Van Alstyne, 207 N. Y. 298). Here the element of intent is found both in the donative language used by the decedent and in the circumstances under which her direction was given. It is apparent that in making this direction late at night and immediately before a major operation the decedent considered it to be a matter of urgency and of importance to her. The direction to give the jewels to her sister was without restriction and, in view of the fact that she had entrusted the jewels to the Count for many months on a memorandum receipt, there is no reason to infer that the decedent intended only a transfer of-possession as a matter of safekeeping during her illness. A letter dated May 22, 1958 was offered to show intent but it is inadmissible for that purpose and has been stricken. The statement in this letter as well as any oral statement attributed to the decedent and antedating the actual direction to deliver the jewelry would not constitute proof of the decedent’s intention at the time she gave the direction for delivery. Her intention at that time is the controlling factor.
In this case physical delivery by the donor herself was not possible and the decedent made the Countess Albani her agent for the purpose of instructing the holder of the property to make a gift of the jewelry to her sister. “ Where the property transferred is in the hands of a third person, a direction to such *842 person to perform whatever acts are necessary to transfer possession will not be construed as limiting the immediate effectiveness of the transfer ”, (Matter of Kaufman, 201 Misc. 905, 909; Matter of Frothingham, 161 Misc. 317; Matter of Cohn, 187 App. Div. 392.) As stated in Manacher v. Sterling Nat. Bank (4 Misc 2d 1069, 1075): “ The determinative factors are that the donor divest himself of title and do all that he can under the circumstances to vest that title in the donee.” (Matter of Dunne, 136 Misc. 250, affd. 232 App. Div. 831; Matter of Kaufman, supra.) The decedent was in a hospital in Washington about to undergo surgery. The property was in the hands of Count Albani. She could do no more than she did do in her efforts to effect the gift. It is well-settled law that a donor may make a gift inter vivos even though at the time of making the gift the donor is under the apprehension of death (Newell v. National Bank of Norwich, 214 App. Div. 331). The rule has been stated as follows: “ The test of ivhether the gift is inter vivos or causa mortis is not merely whether the donor is in extremis, and expects to die, and does die of that illness, but whether he intended the gift to take effect in praesenti, irrevocably and unconditionally, whether he lives or dies ” (38 C. J. S., Gifts, p. 783).
In the case at bar there are no words which would indicate that the gift was a conditional one which would be revocable if the decedent survived her illness. The decedent’s words were clear and constituted a present gift which would have been binding whether the decedent lived or died.
The question of delivery and acceptance revolves around two conversations. One of these took place between the Countess and the decedent’s sister and the other was between the Countess and her husband. Although not objected to on the examination of the Countess, the conversation which took place between her and the decedent’s sister on the morning of September 27 was objected to on the examination of the latter. The conversation between the Countess and the sister served two purposes, it informed the donee of the gift and contained her direction as to its retention by the Count. It is the latter portion of the conversation which is consequential, inasmuch as the manner by which the intended donee learned of the gift is of no materiality. The important question is did she accept it and obtain delivery of it. There is no contention that the donee had physical possession of the property but it is the position of the intended donee that she accepted the gift and took it into her legal possession by designating the Count as her agent to hold the property for her. The legal meaning and definition of the word ‘ ‘ agent ’ ’ has *843 been commented upon in many textbooks and decisions but is basically defined as a person who has agreed to perform an act for a principal on his behalf and subject to his control (Restatement, Agency 2d, § 1, p. 7; § 1, subd. [3], comment e). When the Countess communicated the decedent’s wishes to the Count with respect to the jewelry she was acting as an agent on behalf of the decedent. Having completed that act her agency on behalf of the decedent ended. When in turn she spoke to the donee and was designated by the latter to tell the Count to hold the jewels for her she was acting as agent for the donee. There is nothing inconsistent in her actions and they conform to normal patterns of behavior. As an old and trusted family friend it was natural that the Countess serve as a conduit through which messages were given to her husband, the person in control of the jewelry, and while acting as such agent for each of the parties her acts and declarations were part of the res gestae and admissible in evidence (Stecher Lithographic Co. v. Inman, 175 N. Y. 124; Johnson v. Cole, 178 N. Y. 364, 368). The claim is not made that the decedent attempted to create the Count an agent for the donee or that by any act or declaration of the decedent the Count became a trustee for the donee. It is asserted that the agency under which the Count retained possession of the property for the donee was a separate agency created by the donee. Such a dual agency under which a third person may act for both the donor and the donee has been recognized before this (Matter of Cardwell, 268 App. Div. 514, affd. 295 N. Y. 916).
As the respondent Palmataire has successfully sustained the burden of proof required to establish that the decedent made a valid gift to her the petition for discovery is dismissed and the proceeds resulting from the sale of the jewelry will be paid over to the respondent Florence Palmataire.
Submit decree on notice.